Good morning, Your Honors. May it please the Court. My name is Janelle Locke, and I represent the appellants in this case, Intervet Inc. and Merkin Company. Our argument will address three issues. First, Intervet established a prima facie case of priority in its original suggestion of interference. Second, Intervet fully addressed the issues raised in the show cause order, even though no further showing was required. And third, the Board was arbitrary and capricious in not authorizing the motion to challenge DuPont's accorded benefit. You submitted a declaration, Williams, one of the inventors, which required corroboration. You submitted a notebook page, which you suggested was the corroboration for the reduction of practice. The problem was, much of the notebook page was written in German. You didn't submit a translation as required by the regs. And you redacted a lot of stuff in that document, including the dates. So how is the Board supposed to know what date, for example, that corroborates Williams' claim to reduction of practice in his declaration when you redacted the dates? Put aside whether they should have allowed you to supplement the record, whether you should focus on only what they had in front of them, absent your attempt to supplement. And that's what they had. They had a notebook page in German with redacted dates. Given that I review that for substantial evidence on their fact findings with regard to what that document teaches, I don't speak German. I can't see through the blackouts. So I'm not sure how you think I could find the Board did not have substantial evidence for that fact finding. Your Honor, I believe the date issue is addressed by the fact that redaction of dates in the interference context is accepted practice. MPEP 715.07a spells out the process. As long as there is a statement that the activity occurred before the critical date, you are entitled to redact the dates. The purpose of that is, at the suggestion stage, you don't want to give an unfair advantage to the other side. So redaction of dates is perfectly acceptable practice. But that argument suggests that the PTO is wrong to require corroboration of your claim date. That suggestion means Mr. Williams' statement in the declaration about his date should stand alone and be enough and not require corroboration as to his claim date. Is that your position, that the regulation requires nothing more than his declaration to establish the date? Your Honor, first of all, it's Ms. Williams who is a woman inventor. So we believe that we complied with the procedure according to the MPEP and the case law. I'm asking you a question. Is your view that there is no corroboration needed for a date of reduction of practice that is claimed in an inventor declaration? No, we think the statement in the inventor declaration satisfied that. In addition, the laboratory notebook did provide corroboration of the date. If you look in the study number at the block right below the project title, you see the study number has 2006 in the date. That is the year before the earliest possible DuPont filing date. So that is additional corroboration for that date. The whole thing could have been stricken for failure to abide by the rules that require a translation with a declaration that certifies that the translation is accurate. And none of that happened, right? You're correct, Judge O'Malley. A declaration was not submitted with a certified translation at the time of his suggestion. However, this notebook page provides enough information that one of ordinary skill NARC could understand that the test was conducted and it worked for its intended purpose. Does that say prior to June 27th? What it says is a study number where 2006 is part of the number. You can find that right below the project title. What spot in the appendix would I find it? What is the appendix site? Appendix 587. 587. Is this the redacted version or the non-redacted version? This is Exhibit B as attached to the suggestion of interference. So with regard to the question about the German language. And you want me to look at what? Where you see project, referencing the third party content. The thing that says PO lowercase OF underscore MS underscore 2000 and I'll take your word on it that it's a six. My copy is not particularly legible. Underscore 01. And from that they were supposed to assume that this was something that was produced in 2006. Yes, Your Honor. That's what I'm referring to. 2006 is the year before. But you understand that's not a date. That's a project number. And I'm supposed to find the PTO lacks substantial evidence for a conclusion that this document on its face demonstrates a date. And again, 2006 is the year before the DuPont earliest effective filing date. With respect to the German language aspect, there is much more information in this document that one of ordinary skill in the art would understand. So in addition to the project number, across the page is the... What declaration did you submit that would say that someone of ordinary skill in the art would understand this to be a year versus a number? There is no declaration supporting that. But the document speaks for itself. This is a physical laboratory record. There is no need for corroboration of the contents of a physical laboratory record. That would be an error. That would be corroboration of the corroboration. So we have the date here across the page. We have... How about at the bottom? Look at the very bottom of that where you have a signature. Yes. This is D-A-T-A-N or D-A-T-U-M, rather. That means date, right? Correct, Your Honor. And those are blank? I'm sorry? Those are blank? No, they are not blank. The actual dates are in the actual laboratory notebook record, and they actually do predate the DuPont earliest effective filing date. For purposes of the suggestion of interference... But you're telling us this is a declaration you're relying on. This is what Judge Moore was referring to. Those dates were redacted for purposes of the suggestion of interference. And again, that's accepted practice so that our opponent does not have an unfair advantage in understanding our dates... But there's got to be something else in the declaration that corroborates. You can't just redact a date and say it corroborates. There's got to be something else evident within the document that itself would corroborate. And on that point, we're relying on the 2006 date in the study number. In addition, we have the table of... I still don't... Point with your finger where you're talking about. Right here. Which finger, though? I mean, you're talking about your index finger? Sure. The study number is in the block just below where it says third party compound. There are four lines, and it's in the third line right there. It's the thing that should include people into the date. Isn't that the address? That is the study number. So, in addition to that... I want to hear your next argument. In addition to that information, the other information that one of the ordinaries still in the art would understand from this page is, Tennocephalitis Felis is the name of the flea. It's in Latin. That refers to cat flea. In addition, we have the table of data. The first row, the first column, again, you see the compound number. That's reflected in the title, AH252723. Then in the second column, you see PO. That is a Latin abbreviation, PEROS, which means oral administration. Then in the fourth column, you see the dosage, 10 milligrams per kilogram. Okay, this is your time. You can spend it however you want, but I don't even understand what this is going to. The point is, this laboratory notebook page, when viewed through the eyes of one of the ordinaries still in the art, provided sufficient information to corroborate the Williams Declaration. Except for the date. What I suggested before was you probably want to switch to a different argument, because I know you said you had three things you wanted to cover in this oral argument. You have not persuaded with regard to the date. Nothing personal. It's the facts that you're stuck with. You might want to move on to a different argument, because you have three different ones. Okay, in the event that the court does not find a prima facie case, based on the suggestion or the combination with the information provided in response to the show clause order, then we need to deal with the last sentence of Rule 202-D2. Under that rule, the board may authorize a party to file a motion to challenge accorded benefit. InterVet requested such a motion for interference count one. InterVet provided a detailed technical explanation why the DuPont 2000 provisional application was not a constructive reduction of practice. The board abused its discretion in denying that motion for four reasons. First, the board did not even consider the merits of InterVet's argument. If you look on Appendix 8, footnote 2, the board even states, we have not considered the merits of these arguments. They did say that you failed to show cause as to why you should not have presented or could not have presented this before at the time of filing your suggestion. The board required the request to be made in the suggestion. We believe that was an error. There's nothing in Rule 202-D2 that requires that request to be made in the suggestion. In fact, in this case, it wouldn't make sense. The suggestion of interference was directed to a different count than the count that the board decided to put in the declaration. If you change the count, you're changing the analysis for the constructive reduction of practice. It doesn't make sense. How can you expect InterVet to put an explanation in its suggestion about a count that hasn't even been announced? We believe the board erred in requiring that explanation to be put in a suggestion. In fact, that timing would contradict the rule itself. The rule refers to accorded benefit. Benefit is not accorded until the board makes its statement in the declaration. As I said, when the board did accord benefit in the declaration, it did so for a different count than the one in the suggestion. The suggestion proposed a count encompassing a very large genus of compounds. When the board defined the count, they limited it to compound 11-1, a species. That matters here. You don't know if you have a constructive reduction to practice until you compare the application to the count. The application must have one embodiment corresponding to every element of the count. If the count changes, so does the constructive reduction to practice analysis. Additionally, the board's decision on the Rule 202-D2 request was arbitrary and capricious in view of other board decisions regarding Rule 202-D2. In the Prativa case, the board took the opposite action and granted authorization to file a motion to change benefit in response to a show-cause order. Your whole argument on that is that somehow you were pushed for time, but weren't those time problems all self-imposed? You knew about this a long time ago. Well, the circumstances... Your Honor, the circumstances were not that we were just aware of the DuPont application. We were also aware the third party had filed a notice of interference with the Patent Office so that an interference would be declared between the third party and DuPont. And that is the reason why no action was taken at that time. It was surprising when the Patent Office decided they were not going to declare that interference and instead issued a notice of allowance for the DuPont application. At that point, InterVet had the conference with the examiner. During the conference, the potential for an interference between the InterVet application and the DuPont application was discussed.  that's when the suggestion of interference was submitted. But again, what was submitted in the suggestion of interference, frankly, is irrelevant to the motion that InterVet has requested. Again, in the suggestion of interference, an applicant is required to propose a count. The count that was proposed included a tremendous number of chemical compounds. So that was the target for the accorded benefit analysis. If you have a specification that shows one embodiment within that significantly large count, then you have a constructive reduction of practice. That changed entirely when the board issued their declaration. Instead of adopting the large genus, they picked one single compound, compound 11-1. It turned into a species. So now when you're deciding whether or not an application corresponds to the count, your target is much smaller. And if you look at the reason that... You're well into your rebuttal time. Do you want to use it all up? Well, if there are no further questions then, Your Honor, I'm finished. Yes? Yes, Your Honor. May it please the Court. Frank Smith on behalf of DuPont. I'd like to start with three points of emphasis. The first is that the task for this Court is to not impose its judgment on what it thinks the record might show, but rather to evaluate whether, as Your Honors have indicated, there was substantial evidence to support what the Board did below in light of the evidence, and I use that term loosely, that was submitted initially by InterVet. Viewing the Board's rules, which are well known, published, they clearly did not follow those rules, and there was substantial evidence to support what the Board did. And we all know that substantial evidence is in many ways a misnomer, because all it really means, according to the courts, is more than a scintilla of evidence. That's a phrase we all heard first year, first semester of law school, and while no one ever quantified it for me, we do know that it is very small, and it was clearly substantial evidence for the Board's actions. The second point is that with respect to corroboration, Your Honor, put your finger on it, there has to be something that is submitted to corroborate the evidence, and again, I use that term loosely, that InterVet submitted. You sort of take this position at one point in your red brief, and I'm hoping you don't really mean it. You're not saying that laboratory notebooks could never constitute corroboration of an inventor's declaration. Your Honor, I agree. The cases make it perfectly clear that you look at the totality of the circumstances under the rule of reason, and that is what we submit the Board did here. There are some loose Board cases out there that seem to say if it comes from the inventor themselves, then by definition it's not corroboration, and that's not how I understand the rules of evidence. And I'm with you on that, Your Honor, because there are some circumstances where a document can be, if you will, self-corroborating, particularly with regard to conception, and I think that's where most of those cases come from, because if you think about it, conception can be demonstrated by words on a piece of paper. I have this idea, I put it down on a piece of paper. That would corroborate conception. Okay, so you're just saying this one piece, this one page wasn't enough. This one page was not, particularly with it being in German, substantially illegible and also undated. And the notion that this 2006 number somehow demonstrates a date, maybe so, maybe not, but that was never put to the Board. That was never explained to the Board. That is an argument that appeared for the first time in the briefs before this Court. The Board didn't have the information. They could not possibly have interpreted those four numbers as being indicative of the date on which something happened. It could as easily have been an address. So, Your Honor, the notion that there was any level of corroboration in that initial submission is a complete fallacy. And I think Your Honors have put your fingers on that. The third point I'd like to note is that Intervet frequently asks the wrong question and then provides its own answer based upon its interpretation of what it thinks it submitted to the Board. And again, that's improbable. We've heard today, and we've seen it in the briefs, that a person of ordinary skill would understand certain things. But nowhere submitted to the Board and indeed nowhere to this Court is there a statement of who this person of ordinary skill would be. It's not defined. Presumably it's someone with some relative knowledge of chemistry, but the precise parameters are unknown and unexplained. And what this unknown hypothetical person might glean from this largely illegible German piece of paper is nowhere explained and certainly was not explained to the Board. Now, turning to the last point that Intervet's counsel raised, the motion is, again, it's within the discretion of the Board. That's what the statute says. It says may permit the filing of the motion. That's what their briefs say. And it's an abuse of discretion. If you're looking at whether it's an abuse of discretion or something's arbitrary and capricious, consistent Board practice is something to look at. Now, they're arguing that the Board, in a lot of similar circumstances, has allowed these kinds of motions. Is the Board too tough on them? No, ma'am, I don't think so. No, Your Honor, I don't think so. If you look at their initial submission, they effectively conceded priority. They said, while the DuPont patent application has an effective filing date, which is about two months after What are you referring to? This is Appendix 549. It's about two months after the effective filing date of the DuPont application and so forth. They then say we will prove that we were earlier. Well, that was the time for them to come forward because the rules clearly say that in your application you are to explain in detail why you will prevail. They conceded that on this particular point they were not going to prevail. Now, they argue in their briefs that this is a misinterpretation by the Board. But the Board's interpretation was clearly a rational interpretation of the words that InterVet put on the piece of paper. And that being so, it cannot possibly be an abuse of discretion to have said, why would we let you file this motion and consume our time? Because you have already conceded what you now say you're challenging. And so, Your Honor, it was clearly within the discretion of the Board to do what it did and they cite no case that has facts anywhere close to the facts that are at play here. So, if the Court has other questions, I'm more than happy to try and address them. But I think I've covered the points that I wanted to cover and that you've raised. Okay, thank you, Mr. Smith. Ms. Walke will restore two minutes of rebuttal time. Thank you, Your Honor. We just want to make clear we are not conceding priority. We do believe one of Ordinary Skill and the Art would be able to look at the contents of this laboratory record and understand the tests that was conducted and the results that were obtained. We're not conceding that, but you did make certain concessions, did you not? With respect to the date that was accorded to DuPont? Our position was that the study number included the year 2006, which predates the earliest DuPont accorded benefit. And that supports the Williams Declaration statement saying that all the activity occurred prior to the DuPont earliest benefit date. I also want to say with regard to viewing the lab notebook through the eyes of one of Ordinary Skill and the Art, that is the Board's job. The Brown v. Barbicide cases cited in our brief say the Board is charged with the expertise appropriate to the invention under the examination. One of Ordinary Skill and the Art, in English language speaking, one of Ordinary Skill and the Art, could look at this lab notebook record and see that a mammal was being tested with a compound and the fleas were dying. That's all that needs to be shown. Once the flea is dead, the mammal is protected from the flea. Now with regard to the motion under Rule 202-D2, Your Honors, the Board refused to consider the merits of our request. What was said in the suggestion of interference is irrelevant. We were suggesting a motion to change the accorded benefit as set by the Board in the Declaration. We could not have made that request, that analysis, or that motion until we had the Declaration and knew what count the Board had set. The count in the Declaration was very different than the count in the suggestion of interference. If there are no further questions... Thank you. I thank both Councils. The case is taken under submission.